FILED

2008 Sep-30  PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ANTHONY P. INDELICATO JR.,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 3:07-CV-0469-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff Anthony P. Indelicato, Jr. brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), and Section 1631(c) of the Act, 42 U.S.C. § 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits under Title II of the Act, and his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.

### I. Background

**A.    Proceedings Below**

Plaintiff filed his application for a period of disability, disability insurance benefits, and SSI benefits on April 30, 2004.  (Tr. 34).  Plaintiff alleged a disability onset date of May 1, 2000, but later amended that date to October 15, 2004. (Tr. 59, 76).  Plaintiff's application was denied initially and also upon reconsideration.  (Tr. 36).  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  (Tr. 41).  The hearing was held on May 25, 2005 in Florence, Alabama, before ALJ Earl C. Cates, Jr.  (Tr. 509).  In his June 20, 2005 decision, the ALJ

determined that Plaintiff was not eligible for a period of disability, disability insurance benefits, or SSI benefits because he failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform work at the light to medium exertional level.  (Tr. 29, 30). Plaintiff appealed to the Appeals Council and submitted new medical evidence for the record.  (Tr. 423-508).  After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.  (Tr. 5).

At the time of the hearing, Plaintiff was thirty years old with a high school education.  (Tr. 20, 514).  Plaintiff is married with three children.  (Tr. 24, 514).  Plaintiff had previously worked as a cook, security guard, construction worker, waiter, fast food worker, factory worker, and machine operator.  (Tr. 20-21, 81, 131).  Plaintiff alleges that he has been unable to engage in substantial gainful activity since October 15, 2004 because he is bipolar and suffers from seizures, a schizoaffective disorder, anxiety, depression, and a personality disorder.  (Tr. 21, 60, 73, 80).

**B.     Plaintiff's Medical Evidence of Record Prior to the Hearing**

The record shows that Plaintiff has been under the care of mental health professionals for several years.  The first incident related to Plaintiff's mental health, which is detailed in the record, occurred on January 3, 2001.  On that date, Plaintiff called the emergency hotline reporting anxiety symptoms.  Thereafter he began receiving mental health treatment at Riverbend Center for Mental Health. (Tr. 321). On January 17, 2001, Plaintiff was examined by Dr. Dan Laeupple, a psychiatrist, who diagnosed Plaintiff with a generalized anxiety disorder and schizotypal personality traits.  (Tr. 308-11).  Plaintiff was prescribed Paxil, BuSpar, and Trazodone.  (*Id.*).  During 2001, Plaintiff continued outpatient treatment with Dr. Laeupple.  (Tr. 302-11).

2

Plaintiff was seen every three months in the clinic for medicine monitoring. (Tr. 297-305). Plaintiff reported on October 17, 2002, that he had been laid off from work and he was under mounting stress. (Tr. 297). Plaintiff was found to have major depressive episodes of moderate severity and a generalized anxiety disorder. (*Id.*). On December 13, 2002, during a medication monitoring appointment, Plaintiff stated he was experiencing side effects from his increased Paxil dosage. (Tr. 295). He reported that he became emotionally numb and had difficulty thinking. (*Id.*). Additionally, he described periods where he was unresponsive to outside stimuli. (*Id.*). Plaintiff was instructed to reduce his Paxil dosage and, after discontinuing it, began taking Effexor. (Tr. 296).

Plaintiff received primary care services from Dr. I. Lyman Mitchell, Jr. and was treated for hypothyroidism and various other illnesses, as well as minor physical injuries. (Tr. 22, 400-16). On March 10, 2003, Plaintiff had a syncopal episode and was admitted to the Eliza Coffee Memorial ("ECM") Hospital emergency room. (Tr. 219-20). Plaintiff's co-workers stated that he was unresponsive and staring. (Tr. 220). A CT scan of Plaintiff's head showed no abnormalities. (Tr. 224). On August 7, 2003, Plaintiff fell from the ceiling to the floor. (Tr. 150-56). He was treated at Helen Keller Hospital for left lateral rib pain and his x-rays were normal. (*Id.*). On August 9, 2003, Plaintiff had an acute appendicitis with perforation and was admitted to the ECM Hospital emergency room, wherein an open appendectomy was performed. (Tr. 158). Plaintiff suffered some minor complications following the surgery but recovered and was discharged from the hospital on August 17, 2003. (*Id.*). Dr. Charles W. Marchman administered Plaintiff's post-operative care. (*Id.*).

On August 23, 2003, Plaintiff again presented to ECM emergency room with complaints of back pain after falling backwards in a wheelchair while going up a ramp. (Tr. 201-02). X-rays of Plaintiff's lumbar and thoracic spine were normal. (Tr. 207-08). A CT scan of his thoracic spine was

normal, but did show a small to moderate sized right pleural effusion and right lower lobe infiltrate. (Tr. 212-13).  Plaintiff's chest x-rays showed that his left fifth and sixth ribs were fractured with some adjacent callus.  (Tr. 210).

Plaintiff was admitted to the ECM emergency room on September 9, 2003 with complaints of abdominal pain.  A CT scan revealed a mild adynamic ileus.  (Tr. 184-85, 188-89).  During 2003, Plaintiff continued his appointments for medication monitoring at Riverbend Center for Mental Health.  (Tr. 288-94).  On October 9, 2003, Plaintiff reported that he had improved, but still had some periods of depression, tiredness, and difficulty falling asleep.  (Tr. 288).  Plaintiff was diagnosed with a bipolar affective disorder, not otherwise specified, rule out a schizoaffective disorder, and a generalized anxiety disorder.  (*Id.*).

On November 17, 2003, Plaintiff again presented to the ECM emergency room after being hit in the jaw by a co-worker.  (Tr. 175-79).  X-rays of his jaw were normal.  (Tr. 182-83).

Plaintiff also saw Dr. Christopher Gay for his primary care needs.  On January 26, 2004, Plaintiff reported to Dr. Gay that he was hearing muffled noises all the time and having anxiety spells.  (Tr. 234).  Plaintiff stated that the anxiety spells last for a couple of minutes and then he returns to normal.  (*Id.*).  An MRI of Plaintiff's brain revealed normal findings with the exception of an incidental polyp or retention cyst of the medial wall of the right maxillary antrum.  (Tr. 233).

On February 11, 2004, Plaintiff returned to Riverbend Center for Mental Health and reported to Dr. Radzivicius, general psychiatrist, the onset of anxiety, feeling uneasy, and that he was "losing his mind."  (Tr. 286).  Furthermore, Plaintiff reported that he was hearing voices, like a crowd of people talking to him.  (*Id.*).

On January 8, 2004, Dr. Gay referred Plaintiff to Dr. David Longmire due to partial seizures. (Tr. 235).  Dr. Longmire evaluated Plaintiff on February 10, 2004 and diagnosed him with complex partial seizures, secondary generalized seizures, and common migraine.  (Tr. 276).  Plaintiff was administered an EEG on February 18, 2004, which showed normal results.  (Tr. 272).  On March 30, 2004, Plaintiff was administered another EEG which showed evidence of local right centro-temporal, mid temporal, and posterior temporal epileptogenic focus.  (Tr. 267).  Additionally, Plaintiff's EKG rhythm strip showed a somewhat elevated rate.  (*Id.*).

On March 25, 2004, Plaintiff returned to Riverbend Center for Mental Health reporting that he was feeling anxious, cold, and continued to have difficulty sleeping, but no longer hearing voices. (Tr. 284).  Dr. Evaldas Radzevicius observed that overall, Plaintiff appeared to be improving and his symptoms were becoming more under control.  (*Id.*).  Dr. Radzevicius diagnosed Plaintiff with a schizoaffective disorder and a generalized anxiety disorder.  (*Id.*).

On August 9, 2004, Plaintiff reported to Dr. Radzevicius that he was doing well on his medications.  (Tr. 292-93).   He reported that he was still experiencing anxiety symptoms and had difficulty sleeping.  (*Id.*).  He stated that the Klonopin was effective in helping with his anxiety and did help him get more rest.   (*Id.*).   Plaintiff denied having any major depression or psychotic symptoms.  (*Id.*).

On October 19, 2004, Plaintiff reported to Dr. Stanford, general psychiatrist, that he had felt over-sedation in the mornings while taking Zyprexa and that he was not sleeping well at night.  (Tr. 390-91).  Additionally, Plaintiff stated that he had been fired from his job because he was talking to people at work about flying saucers and other subjects to the point that his co-workers just could not tolerate him anymore.  (*Id.*).  He reported some milder breakthrough depressive symptoms as well.

(*Id.*).   At this time, Plaintiff was diagnosed with a schizoaffective disorder and history of a generalized anxiety disorder.  (*Id.*).

During this time, Plaintiff continued to participate in group therapy at Riverbend Center for Mental Health.  (Tr. 360-61, 363-66, 369, 371, 374-75, 379, 381, 384-89).  On January 31, 2005, Plaintiff saw Dr. Stanford and reported night sweats that started about the same time that he was put on Vistaril.  (Tr. 382-83).  Plaintiff reported that he and his wife had been arguing about their children and the possibility that they would be in the day treatment program as well.  (*Id.*).  Additionally, Plaintiff reported some dissociative states that he had recently, which Dr. Stanford indicated may be breakthrough seizures.  (*Id.*).  However, Plaintiff's diagnoses remained unchanged.  (*Id.*).  That same day, Plaintiff attended group therapy.

Plaintiff returned to Dr. Stanford on February 2, 2005, reporting shortness of breath that he thought was related to the Abilify he was taking.  (Tr. 380-81).  In order to avoid the side effects, Plaintiff was instructed to take half a tablet twice a day.  (*Id.*).  Plaintiff's diagnoses remained the same as his previous visit.  (*Id.*).

Plaintiff saw Dr. Stanford again on February 9, 2005 and discussed with him issues related to his irritability in the home and tolerance of hallucinations and intrusive thoughts.  (Tr. 377).  At that time, Dr. Stanford changed Plaintiff's dosages of Abilify and Zyprexa.  (Tr. 377-78).

Plaintiff visited Dr. Stanford again on February 24, 2005 and reported he was having better clarity of mind, having less trouble with excessive appetite, getting along better with his wife, and finding he was better able to direct his children.  (Tr. 372-73).  Plaintiff was having some akathisia, but was cutting down on caffeine.  (*Id.*).  His diagnosis remained the same.  (*Id.*).

Dr. Stanford saw Plaintiff again on March 14, 2005.  (Tr. 367-68).  Plaintiff stated that he thought he was getting along well with his family and he could tell a distinct improvement in the clarity of his thoughts.  (*Id.*).  Plaintiff said that while his thoughts still sometimes raced, the Cogentin was helping slow them down.  (*Id.*).  At the time, Plaintiff's Global Assessment of Functioning ("GAF") score had improved to 55.  (*Id.*).  A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning according to *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV* 34 (4th ed., text revision 2000).

The ALJ found that the medical evidence of record demonstrates that Plaintiff has a schizoaffective disorder; seizure disorder; affective disorder; anxiety disorder; and personality disorder, but that he is able to care for himself, as shown during his visits to the mental health center when he was neat and causally dressed.  (*Id.*).

**C.     Plaintiff's Medical Evidence of Record After the Hearing**

From May 30, 2005 to July 25, 2005, Plaintiff attended group therapy and, for the most part, participated and appeared stable.  (Tr. 447-60).  In June 2005, during a group therapy session, Plaintiff reported experiencing auditory hallucinations but he was able to handle them.  (Tr. 454).  Plaintiff did not show up for group therapy from July 26, 2005 to August 19, 2005, although he did cancel the sessions scheduled on August 1, 2005 and August 2, 2005.  (Tr. 443-46).  On August 22, 2005, Plaintiff was discharged from group therapy treatment due to his non-compliance.  (Tr. 442).

During a medication monitoring appointment on September 15, 2005, Plaintiff reported that his depression had improved and he denied having any hallucinations, as well as homicidal or suicidal thoughts.  (Tr. 472).  However, on October, 11, 2005 at an individual therapy session,

Plaintiff reported hallucinations and thoughts of "doing evil things." (Tr. 441). When Plaintiff met with Dr. Stanford on October 26, 2005, Plaintiff's GAF score was estimated to be 55 and his mood was euthymic. (Tr. 470). Dr. Stanford noted Plaintiff still showed a little "magical thinking" but was not suicidal or assaultive. (*Id.*). On December 12, 2005 during an individual therapy session, Plaintiff reported that he had dreamed of cutting his daughter's throat. (Tr. 435). Plaintiff also reported paranoia and his mood was noted dysphoric. (*Id.*). During a medication monitoring appointment on December 21, 2005, Plaintiff reported that his depression was better, but he was still having some anxiety. (Tr. 469). He denied any hallucinations, and also denied homicidal or suicidal thoughts. (*Id.*).

Plaintiff met with Donna Grace, a nurse practitioner, for a progress check on January 16, 2006. (Tr. 467-68). Plaintiff showed some "mild magical type thinking," but otherwise appeared alert and oriented. (*Id.*). Plaintiff also showed some abnormal, involuntary motor movements particularly in his lower extremities and some mild hand tremors. (*Id.*). He denied auditory or visual hallucinations, depression symptoms, and there was no evidence of paranoia. (*Id.*). His mood was noted euthymic. (*Id.*). However, at an individual therapy session on the same day, the therapist noted that his mood was dysphoric. (Tr. 433).

On February 17, 2006, Plaintiff saw Dr. Stanford and cried during the appointment, grieving for his grandfather who had recently passed away. (Tr. 464-65). Dr. Stanford found that Plaintiff's mood was still within the euthymic range but there was superimposed sadness and grief. (*Id.*). Dr. Stanford estimated Plaintiff's GAF score to be 55 as compared to the general population. (*Id.*). On March, 16, 2006, at a progress check with Donna Grace, Plaintiff reported some restless anxiety symptoms and exhibited some constant leg movements. (Tr. 462-63). However, his mood was

euthymic and he was alert, oriented, and clean, and his speech was clear, coherent, and organized. (*Id.*).

From October 11, 2005 to March 27, 2006, Plaintiff attended nine individual therapy sessions and during a majority of them, was noted to have a dysphoric mood. (Tr. 429-41). Additionally, Plaintiff almost always denied having hallucinations, homicidal or suicidal thoughts, or paranoia, (although he reported hallucinations and "evil thoughts" on October 11, 2005, a decrease in memory on November 14, 2005, and homicidal thoughts on December 16, 2005). (*Id.*).

## II. ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC is what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since October 15, 2004, his amended onset date of disability. (Tr. 21). Based on the medical evidence presented, the ALJ concluded that Plaintiff has the following "severe" impairments as defined by the Act: a schizoaffective disorder; seizure disorder; affective disorder; anxiety disorder; and personality disorder. (Tr. 24). Nonetheless, the ALJ determined that the severity of Plaintiff's impairments, either singly or in combination, neither meet nor equal the requirements for any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4. (Tr. 24).

According to the ALJ, Plaintiff's subjective complaints concerning his impairment and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. (Tr. 29). Additionally, the ALJ gave consideration to the state agency medical reports, as well as the reports of other treating, examining, and non-examining medical sources. (Tr. 26). Because they were from non-treating, non-examining sources, and additional evidence was received, the ALJ did not accord great weight to certain medical opinions. (*Id.*). Furthermore, the ALJ did not give controlling weight to Dr. Stanford's opinion, even though he was Plaintiff's treating physician, because his opinion was not entirely consistent with the medical evidence of record. (*Id.*). The ALJ noted that Plaintiff's last

10

examinations indicate that he was experiencing only moderate mental difficulties–he was functioning well with his three children and his wife; his personal hygiene and appearance were maintained; his medication was helping him; and he was having clarity of thought. (*Id.*). In particular, the ALJ found that Dr. Stanford's determination that Plaintiff had severe limitations is not supported by the medical evidence of record. (*Id.*).

The ALJ examined Plaintiff's past relevant work experience and found that Plaintiff is unable to perform his past relevant work. (Tr. 26). However, after consideration of all the medical evidence of record, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retains the RFC to perform the exertional demands of a significant range of light work with moderate mental limitations, as well as seizure precautions. (Tr. 26, 29). The ALJ applied the Eleventh Circuit pain standard and concluded that Plaintiff's medical condition is not of such severity that it can reasonably be expected to give rise to disabling pain or limitations. (Tr. 25).

A vocational expert ("VE") testified that Plaintiff could work as a counter clerk, ticket seller, or survey worker. (Tr. 28). The ALJ accepted the VE's testimony and found that a significant number of jobs exist in the national economy which Plaintiff could perform with limitations. (Tr. 27-29). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined by the Act, and therefore, is not entitled to a period of benefits. (Tr. 28-29).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (*See* Pl.'s Mem. Doc. # 9, at 1, 20). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and the decision contained significant errors

of law.  (*See* Pl.'s Mem. Doc. # 9, at 20).  Specifically, Plaintiff argues that there are four reasons why this court should grant the relief he seeks: (1) the ALJ erred in minimizing the severity of Plaintiff's mental limitations; (2) the ALJ improperly relied on the VE's response to a vague hypothetical question during the hearing; (3) the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist and the state agency psychiatrist; and (4) the Appeals Council abused its discretion in failing to remand this case based on the newly submitted evidence. (*See* Pl.'s Mem. Doc. # 9, at 1).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed

even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.  For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed .

<h2 align="center">V.  Discussion</h2>

In light of the legal standards that apply in this case, this court rejects Plaintiffs arguments for remand.  The court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

**A.**     **The ALJ Properly Considered the Severity of Plaintiff's Mental Limitations**

Plaintiff's first argument is that the ALJ erred in minimizing the severity of his mental limitations.  (*See* Pl.'s Mem. Doc. # 9, at 1).  Additionally, Plaintiff asserts that the ALJ improperly found that his condition was not going to last at least twelve months even though he has an extensive history of treatment for a schizoaffective disorder.  (*Id*.).  Furthermore, Plaintiff argues that the ALJ failed to recognize that he attends counseling three hours a day, three times per week, through a day-treatment program.  (*Id*.).

**i.**     **The ALJ Properly Considered Plaintiff's Medical History**

Plaintiff argues that the ALJ failed to take into account the nature of psychotic disorders, which are characterized by periods of exacerbation and remissions.  (*See* Pl.'s Mem. Doc. # 9, at 9-10).  Also, Plaintiff argues that the ALJ improperly selected a short period of time to examine his medical condition.  (*See* Pl.'s Mem. Doc. # 9, at 11).

The ALJ must consider all of the medical evidence as well as other evidence when assessing a claimant's RFC.  *See* 20 C.F.R. § 404.1545.  A claimant's mental condition may vary considerably

over time.  *See* 20 C.F.R. Pt. 404, Subp't P, App. 1, § 12.00 (D).  Proper evaluation of a claimant's mental impairments must take into account any variations in the level of the claimant's functioning over time in arriving at a determination of severity.  (*Id*.).  Therefore, evidence should include relevant sources over a sufficiently long period of time prior to the date of adjudication in order to establish the severity of the mental impairment.  (*Id*.).

If a claimant has chronic organic psychotic and affective disorders, he may have his life structured in such a way as to minimize stress and reduce his symptoms and signs.  *See* 20 C.F.R. Pt. 404, Subp't P, App. 1, § 12.00 (D).  In such a case, the claimant may be more impaired for work than his symptoms and signs would indicate.  (*Id*.).  In order for an impairment to result in a disability finding, it must be expected to last a period of twelve months from the onset date of disability and cause an inability for the claimant to perform any substantial gainful activity.  *See* 20 C.F.R. 404.1505; 42 U.S.C.A. § 423.  Therefore, the ALJ must take into account the evidence of a claimant's mental impairment prior to the disability onset date to determine whether he is disabled, and the ALJ must also examine the twelve month period after the onset date of disability to determine whether the claimant is able to work.

Plaintiff argues that the ALJ did not properly consider the periodic exacerbation and remission nature of his mental impairments.[1]  (*See* Pl.'s Mem. Doc. # 9, at 9-12).  However, the ALJ

---

[1]Plaintiff asserts that in *Andler v. Chater*, the Eighth Circuit found that mental illnesses are characterized by periods of remissions and exacerbations. *Andler v. Chater*, 100 F.3d 1389 (8th Cir. 1985).  (*See* Pl.'s Mem. Doc. # 9, at 9-10).  Plaintiff also cites *Sears v. Bowen*, 840 F.2d 394, 400 (7th Cir. 1987); *Lowe v. Barnhart*, 2004 WL 2203424, *10 (N.D. Ill. 2004); *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001).  (*See* Pl.'s Mem. Doc. # 9, at 10).  However, *Andler* and the other cases cited by Plaintiff are not within the Eleventh Circuit, nor does the Eleventh Circuit cite to these cases.  Therefore, *Andler* and the other cases are not controlling but rather at best persuasive

reviewed Plaintiff's mental history in his decision and expressly mentioned the exacerbations and remissions. (Tr. 22-25).

The ALJ noted Plaintiff's mental impairment history dating from January 3, 2001 to the hearing on May 25, 2005 in his decision. (Tr. 23-24, 27). The ALJ found that Plaintiff has a schizoaffective disorder, seizure disorder, anxiety disorder and personality disorder. (Tr. 24). However, the ALJ found no evidence that Plaintiff's mental impairments have ever resulted in more than one or two episodes of deterioration or decompensation of extended duration. (Tr. 24-25). Also, the ALJ remarked that while Dr. Stanford opined that Plaintiff suffered from severe mental impairments that could be in the marked category, there is no indication that these mental impairments will continue to be to that same degree. (Tr. 27). Furthermore, the ALJ recognized that although Plaintiff has mental impairments, it was not clear that they were severe enough to prevent him from working for twelve consecutive months. (Tr. 27-28). In light of Plaintiff's testimony during the hearing that his attorney advised him not to work, the ALJ refused to speculate that the severity of Plaintiff's impairments as represented by Dr. Stanford will prevent him from working. (Tr. 28).

Because the ALJ considered evidence of Plaintiff's condition prior to the disability onset date up to the period of adjudication, the ALJ properly considered Plaintiff's medical condition.

––––––––––––––––––––––––

authority.

15

### ii.    Substantial Evidence Supports the ALJ's Finding that Plaintiff Could Work for Twelve Continuous Months

Plaintiff argues that because of the nature of his mental impairments, he cannot work on a sustained basis.  (*See* Pl.'s Mem. Doc. # 9, at 8-9).  According to Plaintiff, his mental impairments have periods of remission and periods of exacerbation which interferes with his ability to work.  (*See* Pl.'s Mem. Doc. # 11, at 1-2).  Plaintiff argues that the ALJ only focused on a certain period of time to show an improvement in his condition and the ALJ did not take into account the fluctuating nature of his mental impairments when making his decision.  (*See* Pl.'s Mem. Doc. # 11, at 4-5).

A claimant must show that he is unable to engage in any substantial gainful activity because of a medical impairment that has lasted, or is expected to last, for a continuous period of not less than twelve months.  *See* 42 U.S.C. § 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212, 217-25 (2000) (claimant's inability to work must last for a continuous period of at least twelve months); 20 C.F.R. §§ 404.1505(a), 416.905(a); 404.1509; 416.909.  The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  A claimant "may have attempted to work or may have actually worked during the time pertinent to the determination of disability." *See* 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00 (D).  Information concerning a claimant's behavior during any work attempt and the circumstances surrounding termination of his work effort are useful as evidence.  *Id.*

The ALJ determined that Plaintiff's onset date of disability was October 15, 2004, the hearing was held May 25, 2005, and the ALJ's decision was rendered on June 20, 2005.  (Tr. 20, 30).  A

period of eight months passed from the onset date of disability until the ALJ rendered his decision. Because less than twelve months had passed on the decision date, Plaintiff must show a mental impairment that was expected to render him unable to work for the remaining four months. *See* 20 C.F.R. § 404.1505.

Plaintiff's last job ended in October 2004 after he had worked for a period of three and a half months. (Tr. 21, 25). He was working for Fox's Pizza and alleged that he was fired for purposely cutting himself with a knife. (Tr. 25). However, Plaintiff reported to Dr. Stanford that he was fired from Fox's Pizza because he was talking to his coworkers about his belief in flying saucers and other things and they could no longer tolerate him. (Tr. 25). Plaintiff testified that he worked at Miller Pipe Line prior to working at Fox's Pizza. (Tr. 25, 523-24). Plaintiff was not clear as to whether he was terminated or laid off from this job, but he testified that he had a seizure while working and was fired. (Tr. 25). Plaintiff further testified that while working as a security guard he had a hallucination that someone was trying to break into the place where he was working, so he called the police. (Tr. 531).

The ALJ found that Plaintiff's mental limitations cause mild restrictions in his activities of daily living, mild difficulties in his maintaining social functioning, and moderate deficiencies in his concentration, persistence or pace. (Tr. 24-25). Additionally, the ALJ found that there is no evidence that Plaintiff's mental impairment has ever resulted in more that one or two episodes of deterioration or decompensation of extended duration. (Tr. 24-25). The ALJ noted that Plaintiff's GAF score improved from a 40 to 45 in October 2004, and then to 55 in March 2005. (Tr. 26). Plaintiff informed Dr. Stanford that his medication was helping, he was having better thought clarity,

17

and he was getting along well with his family. (*Id*.). The ALJ found that Plaintiff's condition was improving and that the evidence does not support the conclusion that Plaintiff will be unable to work for a continuous period of twelve months. (*Id*.). These findings are supported by substantial evidence.

### iii. The ALJ Properly Considered All of the Evidence, Including Plaintiff's Group Therapy

Plaintiff argues that the ALJ failed to recognize that he was in counseling for three hours a day, three days a week, during the eight months in question, (*See* Pl.'s Mem. Doc. # 9, at 8). Furthermore, Plaintiff maintains that his therapy sessions interfered with his ability to hold a job. (*See* Pl.'s Mem. Doc. # 9, at 8-9).

When assessing a claimant's RFC, an ALJ must consider all of the medical evidence, as well as any other relevant evidence. *See* 20 C.F.R. § 404.1545. Here, the ALJ found that the opinion of Plaintiff's treating physician, Dr. Stanford, was inconsistent with the other medical evidence of record. (Tr. 26). Dr. Stanford was the physician who recommended the therapy sessions to Plaintiff. (Tr. 390). While the ALJ did not discuss the frequency nor the length of Plaintiff's counseling sessions, or whether the therapy sessions might interfere with his ability to work, the ALJ did note that Plaintiff went to group therapy at Riverbend Center for Mental Health. (Tr. 24). Plaintiff went to therapy from December 2004 through the date of the hearing. (Tr. 360-89). After the hearing, Plaintiff continued group therapy but only showed up for sporadic sessions between June 6, 2005 and July 25, 2006. (Tr. 457-46). Plaintiff consistently failed to show up for sessions from July 26, 2005 through August 19, 2005. (Tr. 443-46). Eventually, Plaintiff was discharged from therapy due to noncompliance. (Tr. 442).

18

As the Eleventh Circuit has made clear, the district court should review the record as a whole, including evidence submitted to the Appeals Council, to determine if the denial of benefits was erroneous.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258, 1266-67 (11th Cir. 2007).  In other words, this court must determine whether the new evidence supports the ALJ's decision or gives cause for a remand.  *Id.*  However, the new evidence must relate to the relevant time period between the onset of disability and the ALJ's decision.  *See* 20 C.F.R. § 404.970(b).

The ALJ's decision was entered on June 20, 2005 and Plaintiff was discharged from group therapy sessions in August 2005.  (Tr. 30, 442).  Therefore, Plaintiff's "new evidence" does not suggest he was disabled for a period of twelve months.  Simply stated, Plaintiff's discharge from therapy due to his failure to attend numerous sessions undercuts his claim that he attended therapy so frequently as to limit his ability to work.[2]  Indeed, even after missing such an extensive stretch of time in therapy, the evidence shows that Plaintiff continued to experience no more than moderate mental limitations.  Thus, even if the new evidence submitted after the ALJ's decision suggested he was disabled for at least twelve months (and it does not), there is another reason for rejecting Plaintiff's arguments here:  he was noncompliant with respect to his group therapy sessions and that is an alternative basis for concluding he has not made the necessary showings in this case.

---

[2]From June 13 through August 22, 2005, Plaintiff failed to show up for therapy numerous times and was eventually discharged for noncompliance.  (Tr. 442-56).  When Plaintiff did show up for therapy, the record shows he continued to do well maintaining symptom stability, he denied an increase in symptoms, and he stated that the treatment he received was helping decrease his symptoms.  (Tr. 446, 449-51).

**B.      The ALJ Properly Relied on the Vocational Expert's Response to His Hypothetical Question**

Plaintiff argues that the ALJ improperly relied on the VE's response to a hypothetical question that included "moderate mental limitations" and did not specify the nature of the specific moderate mental limitations at issue.  (*See* Pl.'s Mem. Doc. # 9, at 14).   Additionally, Plaintiff asserts that he did not have to raise the issue during the hearing with the ALJ.  (*See* Pl.'s Mem. Doc. # 9, at 8).

**i.      Plaintiff Can Still Raise the Issue of Whether the Hypothetical Question Posed to the Vocational Expert During the Hearing was Appropriate**

Defendant argues that because Plaintiff did not raise an objection or ask for a clarification during the ALJ hearing, that opportunity has passed.  (*See* Def.'s Mem. Doc. # 10, at 20).  Plaintiff responds by arguing that it was not necessary to address the issue during the hearing.  (*See* Pl.'s Mem. Doc. # 11, at 8).  The court agrees with Plaintiff.

In *Sims v. Apfel*, the United States Supreme Court explained that in Social Security proceedings, there is no statutory authority requiring issue exhaustion. 530 U.S. 103, 110-11 (2000). "Social Security proceedings are inquisitorial rather than adversarial.  The ALJ's duty is to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (*citing Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)).  "Claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues." *Id.* at 112.  Here, even though during the hearing Plaintiff did not raise the issue of whether the ALJ's question to the VE was appropriate, it was not necessary for Plaintiff to do so in order to preserve that issue.

20

ii.     **The ALJ Properly Relied on the Vocational Expert's Response to His Hypothetical Question that Included "Moderate Mental Limitations" But Did Not Specify the Nature of the Specific Moderate Mental Limitations**

Plaintiff argues that the ALJ improperly relied on the VE's response to a hypothetical question that included "moderate mental limitations" and did not specify the nature of the specific moderate mental limitations at issue. (*See* Pl.'s Mem. Doc. # 9, at 14). Specifically, Plaintiff claims that the term is too broad and cannot suffice to account for Plaintiff's various mental limitations. (*See* Pl.'s Mem. Doc. # 9, at 14-15). Contrary to that position, Defendant argues that the VE knew what the ALJ meant by "moderate mental limitations" and that the term included all of Plaintiff's limitations. (*See* Def.'s Mem. Doc. # 10, at 19-20). Furthermore, Defendant claims that since the VE was aware of Plaintiff's medical record, and that the VE knew what moderate mental limitations were involved. (*See* Def.'s Mem. Doc. # 10, at 20). Defendant also notes that Dr. Vargas, the state agency medical consultant, described Plaintiff as having "moderate mental limitations" and that the DSM-IV-TR defines a GAF score of 55 as "moderate" symptoms or "moderate" difficulties in occupational functioning. (*See* Def.'s Mem. Doc. # 10, at 20).

In support of his position, Plaintiff cites *Pendley v. Heckler* which found that certain hypothetical questions posed to the VE during a hearing were improper because the ALJ did not sufficiently describe the impairments. 767 F.2d 1561 (11th Cir. 1985). However, there are important differences between *Pendley* and this case. In *Pendley*, the ALJ did not include any reference to the psychological impairments in his hypothetical question. The ALJ only listed physical limitations and an I.Q. limitation. The Eleventh Circuit concluded that the ALJ's failure to

21

list anxiety and depression, which were found to be severe limitations, was improper because the ALJ cannot assume that the VE took those limitations into account when responding. *Id.*

In *Wind v. Barnhart*, the Eleventh Circuit distinguished its *Pendley* decision because in *Wind* the ALJ asked the VE a series of hypothetical questions about the claimant's "mild to moderate" limitations and "limited but satisfactory" ability to work. 133 Fed.App. 684, 2005 WL 1317040 (11th Cir. 2005).[3] The court found that these characterizations sufficiently included all of the claimant's impairments. *Id.*

Here like *Wind* (and unlike *Pendley*), the ALJ posed several hypothetical questions that covered all of Plaintiff's limitations: seizure precautions, 30 years of age, RFC for light work, Plaintiff's past work experience, and moderate mental limitations. (Tr. 550-51). Thus, the VE's testimony was based on the appropriate hypotheticals presented by the ALJ (Tr. 550-51), and the ALJ based his findings on the VE's testimony and found that Plaintiff is capable of making a successful adjustment to various jobs that exist in significant numbers in the national economy. (Tr. 28).

The ALJ found that Plaintiff has mild to moderate limitations in all areas. (Tr. 26). When the ALJ asked the VE the hypothetical question using the words "moderate mental limitations," the ALJ did not need to be more specific to differentiate one limitation from another because all of the limitations were moderate. The ALJ's hypothetical question sufficiently comprised all of Plaintiff's impairments. Therefore, it was appropriate for the ALJ to rely on the VE's response to his hypothetical question with the words "moderate mental limitations."

---

[3] While *Wind v. Barnhart* is not a published decision, the court finds it persuasive.

**C.    The ALJ Properly Considered All of the Evidence of Record in His Decision**

Plaintiff argues that the ALJ rejected the medical opinions of Plaintiff's treating psychiatrist and the state agency psychiatrist. (*See* Pl.'s Mem. Doc. # 9, at 15). Furthermore, Plaintiff asserts that in rejecting those opinions, the ALJ substituted his own medical opinion to form an administrative assessment without using substantial evidence. (*See* Pl.'s Mem. Doc. # 9, at 15).

**i.    The ALJ Gave Appropriate Weight to the Opinions of Plaintiff's Treating Psychiatrist and the State Agency Psychiatrist**

Plaintiff argues that the ALJ erred in rejecting the opinions of Plaintiff's treating psychiatrist, Dr. Sanford, and the state agency psychiatrist. (*See* Pl.'s Mem. Doc. # 9, at 15). Defendant claims that the ALJ did not actually reject either opinion, but rather merely gave little weight to both. (*See* Def.'s Mem. Doc. # 10, at 14). It is well-established in this circuit that "[a] treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.' *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (good cause existed where the opinion was contradicted by other notations in the physician's own record)." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). A treating physician's opinion should be given significant weight only if it is well-supported by clinical and laboratory findings, is not internally inconsistent, and is consistent with other evidence. *See*, 20 C.F.R. §§ 404.1527(a), (b), (c)(2), and (d)(3)-(4); 416.927(a), (b), (c)(2), and (d)(3)-(4); SSR 96-2p, 61 Fed. Reg. 34490, 34491 (1996) (error to give opinion controlling weight simply because it's from a treating source if not well supported by medical evidence or inconsistent with other evidence). In addition, an ALJ finds that a treating source's medical opinion is inconsistent with other substantial evidence in the record, the opinion is not entitled to "controlling weight." SSR 96-2p. However, "[t]reating source medical

23

opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527, 416.927." *Id.* If any of the evidence, including medical opinions, is inconsistent with other evidence in the record, then the ALJ must weigh all of the evidence to make a determination of disability. *See* 20 C.F.R. § 404.1527. Generally, the more consistency that is found in a medical opinion, the more weight an ALJ will accord to it. *Id.*

Here, a review of the record and his decision shows the ALJ did not wholly reject the opinions of either Plaintiff's treating psychiatrist or the state agency psychiatrist. The ALJ considered the opinions of the state psychiatrist as well as other treating, examining, and non-examining medical sources. (Tr. 26). The state psychiatrist's opinions were not given "great weight" because "they are from a non-treating, non-examining source and additional evidence has been received since that time." (Tr. 26). Dr. Vargas, the state agency psychiatrist, examined Plaintiff in August 2004, two months prior to Plaintiff's onset date of disability. (Tr. 329-46).

The ALJ also gave some weight to the opinions of Plaintiff's treating physician, Dr. Stanford. (Tr. 26). However, the ALJ did not give great weight to his opinion because he found that it was not entirely consistent with the medical evidence of record. (*Id.*). The ALJ explained the inconsistency in Dr. Stanford's notes. (*Id.*). In his opinions, Dr. Stanford noted that Plaintiff was getting along with his wife and three children. (*Id.*). Dr. Stanford also observed that: (1) Plaintiff was able to maintain personal hygiene and appearance (*Id.*); and (2) Plaintiff's medication was adjusted and it was helping him. (*Id.*). When Dr. Stanford examined Plaintiff on March 14, 2005, he stated Plaintiff's thoughts were clear and coherent. (*Id.*). Although Dr. Stanford indicated severe limitations, his findings from his examinations of Plaintiff only show moderate limitations. (*Id.*).

24

The ALJ explained his reasoning for determining that Dr. Stanford's opinion should not be accorded controlling weight and also articulated why he did not allocate great weight to either the treating physician or the state psychiatrist's opinions. The ALJ did not wholly reject either medical opinions but he properly considered them along with the other evidence, and properly made a determination that was supported by substantial evidence.

### ii.    The ALJ Appropriately Assessed Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ substituted his own medical opinion in place of the physicians. (*See* Pl.'s Mem. Doc. # 9, at 15). Defendant argues that the ALJ did not wholly reject the physicians' opinions but rather accorded weight to both of the medical opinions that he found reliable to determine Plaintiff's capabilities. (*See* Def.'s Mem. Doc. # 10, at 14-18).

The ALJ's finding must be based on the entire record, including medical source statements. *See* 20 C.F.R. § 404.1545. The RFC is the ALJ's finding of what a claimant can do in spite of his limitations. SSR 96-5p, 61 Fed. Reg. 34471, 34473 (1996). Although the ALJ may adopt the opinions in a medical source statement, a medical source statement must not be equated with a RFC. *See* SSR 96-5p, 61 Fed. Reg. 34471, 34474 (1996). It is the ALJ's responsibility, not the physicians, to assess the claimant's RFC. *See* SSR 96-5p, 61 Fed. Reg. 34471, 34473-74 (1996); 20 C.F.R. §§ 404.1546, 416.946; 404.1527(c), 416.927(c).

Some opinions by medical physicians are not medical source opinions, but rather are opinions on issues reserved for the ALJ. *See* 20 C.F.R. § 404.1527(e). These opinions address whether a claimant is disabled based on their RFC. *Id.* If a claimant provides a statement containing a physician's opinion of his remaining capabilities, the ALJ will evaluate such a statement in light of

the other evidence presented, but the ultimate determination of disability is reserved for the ALJ. (20 C.F.R. §§ 404.1513, 404.1527, 404.1545).

The ALJ acknowledged Dr. Stanford's medical opinion as to Plaintiff's condition, comments, and GAF scores. (Tr. 26). Additionally, the ALJ considered the reports of the state agency and took Plaintiff's testimony into account in determining his RFC. (Tr. 25-26). The ALJ found that Plaintiff's mental limitations include mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate deficiencies in concentration, persistence or pace. (Tr. 24). Additionally, the ALJ found Plaintiff to have approximately one to two seizures per month. (Tr. 26). The ALJ concluded that there was no evidence that Plaintiff's mental impairments caused deterioration or decompensation for any extended duration. (Tr. 24-25).

The ALJ found that Plaintiff retained the RFC to perform work at the light to medium exertional level, but may require seizure precautions, and has mild to moderate limitations in all areas. (Tr. 26). While the ALJ did not accord controlling weight to a physician's opinion, the ALJ properly determined Plaintiff's RFC by examining all of the evidence in the record, including the physicians' opinions. The ALJ's decision as to Plaintiff's RFC was supported by substantial evidence.

**D.     The Appeals Council Properly Used Its Discretion in Failing to Remand This Case With the Newly Submitted Evidence by Plaintiff**

Finally, Plaintiff argues that the Appeals Council abused its discretion in failing to remand this case based on the newly submitted evidence. (*See* Pl.'s Mem. Doc. # 9, at 15). Plaintiff also asserts that the new evidence indicated Plaintiff's mental impairment continued to fluctuate in intensity and that it was not as stable as the ALJ concluded. (*Id.*).

i.     **The District Court May Review New Evidence Submitted to the Appeals Council to Determine Whether the Evidence Supports the ALJ's Decision**

Plaintiff presented new evidence to the Appeals Council that was not yet a part of the record when the ALJ made his decision.  According to the Regulations:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

Under *Ingram v. Comm'r of Soc. Sec. Admin.*, the district court must evaluate the record in its entirety, including the additional evidence submitted to the Appeals Council, to determine whether substantial evidence supports the ALJ's decision and if the Appeals Council properly denied the claimant's request for review.  496 F.3d 1253, 1258, 1266-67 (11th Cir. 2007); *see* 20 C.F.R. § 404.970(b).  This court does not need to examine whether Plaintiff had "good cause" for not submitting his evidence earlier to the ALJ for review.  Rather, as the Eleventh Circuit held in *Ingram*, the court may consider evidence properly submitted to the Appeals Council.  496 F.3d at 1266-67.  To be clear, however, the district court can only review relevant new evidence that dates from the period of disability onset to the ALJ's hearing decision.  *See* 20 C.F.R. § 404.970(b).

The new medical evidence was appropriately submitted to the Appeals Council, the Appeals Council considered Plaintiff's arguments challenging the ALJ's decision, and the appeal was subsequently denied.  (Tr. 5).  The evidence was also properly submitted to this court.  Therefore, it is appropriate for the court to consider all of the evidence, including the new evidence, that relates

to Plaintiff's mental condition from the disability onset date to the date of the ALJ's decision, June
20, 2005.  *See* 20 C.F.R. § 404.970(b).

    **ii.**    **Even Considering the New Evidence Submitted to the Appeals Council, the ALJ's Decision is Still Based Upon Substantial Evidence**

Plaintiff claims that the new evidence supports his argument that his condition was not stable
and continued to fluctuate.  (*See* Pl.'s Mem. Doc. # 9, at 19).  Defendant argues that the new evidence
supports the ALJ's decision that he was not disabled because it shows that Plaintiff's condition
continued to improve.  (*See* Def.'s Mem. Doc. # 9, at 9-11).

The court may not consider any new evidence that is based on Plaintiff's mental condition
after the ALJ's hearing decision.  *See* 20 C.F.R. § 404.970(b).  But, even if this new evidence were
to be considered, it actually supports the ALJ's decision.  When reviewing the evidence, including
the new evidence, the district court must determine whether there is substantial evidence to support
the ALJ's decision.  *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  Substantial
evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant
evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894
F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).

From October 11, 2005 until March 27, 2006, Plaintiff attended nine individual therapy
sessions and at a majority of them, it was noted that he was in a dysphoric mood.  (Tr. 429-41).
Plaintiff reported hallucinations and "evil thoughts" on October 11, 2005; decrease in memory on
November 14, 2005; and homicidal thoughts on December 16, 2005.  (*Id.*).  However, at his other
therapy sessions, Plaintiff almost always denied having hallucinations, homicidal thoughts, suicidal
thoughts, or paranoia.  (*Id.*).  When Plaintiff met with Dr. Stanford on October, 26, 2005, Plaintiff's

GAF score was estimated to be 55 and his mood was euthymic.  (Tr. 470).  Plaintiff showed a little "magical thinking," but he was not suicidal nor assaultive.  (*Id.*).

While there is some evidence to suggest that Plaintiff had some exacerbations in his mental condition, there is also evidence that Plaintiff was improving and more stable, which supports the ALJ's decision.  Accordingly, even if this court were to weigh the new evidence, it does not change its conclusion that substantial evidence in the record supports the ALJ's decision.

### VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____30th_____ day of September, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

29